IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

**CHARLES NATHANIEL DAWSON** )   CIVIL ACTION NO.: 2:05-1749-DCN
                                                          )   CRIMINAL NO.: 2:02-1305
         **vs.**                            )
                                                          )
**UNITED STATES OF AMERICA**   )   **OPINION AND ORDER**

### **THE CRIME AND THE PUNISHMENT**

On the afternoon of August 9, 2001, Detective Scott Deckard of the North Charleston Police Department received information from a confidential source that Carlos Gist, an individual wanted by law enforcement for assault and battery with intent to kill, was a passenger in an orange 1990 Nissan Maxima being driven by a man named Donovan P. Henderson. The source further told Detective Deckard that Henderson and Gist were currently parked in this car in the Mixon Street area of North Charleston.

Detective Deckard and other officers began to search for the Maxima and Gist. The "search party" was then informed by Detective Greg Gomes that he had spotted the orange Maxima and was following it. When Detectives Campbell and Deckard caught up with Gomes and the Nissan Maxima, the Maxima pulled off of the interstate and into a convenience store. Both Henderson and petitioner (whom the officers thought was Gist) then got out of the Maxima.

Deckard went after the driver, Henderson, who was still outside the store. With their weapons drawn, Detectives Campbell and Gomes followed Dawson, who had

entered the store. Campbell and Gomes spotted Dawson standing near a beer cooler with his hands inside his waistband. Detective Campbell then handcuffed Dawson (who Campbell still thought was Gist) and escorted him from the store and placed him under arrest. In a search incident to his arrest, the officers seized seventeen grams of crack from Dawson's pockets. Soon thereafter, another officer arrived and informed the officers that they had arrested Dawson instead of Gist. In the meantime the officers were informed by a store patron that Dawson had placed a firearm into an open beer cooler inside of the store. The officers recovered a loaded firearm from the beer cooler and the store videotape which showed Dawson near this beer cooler with his shirt raised.

Petitioner pled guilty on September 2, 2003, to possessing with the intent to distribute 5 grams or more of crack cocaine in violation of Title 21, United States Code, Section 841(a)(1). On December 9, 2003, the court sentenced petitioner to 235 months in prison. After exhausting his appellate rights, petitioner timely filed the instant motion on June 17, 2005.

## THE ISSUES AND THE ANALYSIS

Petitioner raises one claim in his motion. He asserts that his trial counsel, Assistant Federal Public Defender Ann Briks Walsh, Esquire, was ineffective for failing to object to the following at sentencing: (1) petitioner's offense level calculations; (2) petitioner's criminal history computation; (3) petitioner's career offender status; and (4) the ultimate sentence imposed by the court as violative of the Guidelines.

### Ineffective Assistance of Counsel

Petitioner asserts that Ms. Walsh was ineffective for failing to object to various aspects of the presentence investigation report ("PSR") at sentencing. In order to prevail on a claim of ineffective assistance of counsel, Dawson bears the burden of showing that (1) counsel's performance fell below an objective professional standard of reasonableness; and (2) that counsel's deficiencies prejudiced his defense. *Strickland v. United States*, 466 U.S. 668, 687-92 (1984). When evaluating counsel's performance under the first prong of the *Strickland* test, this court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 680. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id*. at 689. *See also, Matthews v. Evatt*, 105 F.3d 907, 918-21 (4th Cir. 1997); *Fields v. Attorney General of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir.), *cert. denied,* 506 U.S. 885 (1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir.), *cert. denied*, 474 U.S. 865 (1985); and *Hutchins v. Garrison*, 724 F.2d 1425, 1430, 1431 (4th Cir. 1983), *cert. denied*, 464 U.S. 1065 (1984). As the *Strickland* court observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was reasonable. . . [E]very effort [must] be made to eliminate the distorting effects of hindsight. . .
> *Id*. at 689.

In order to prevail on the second prong of *Strickland*, Petitioner "must show there is a reasonable probability that but for counsel's unprofessional errors, the result of the

3

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id* at 694. Both the Supreme Court and the Fourth Circuit have held that defendants bear the burden of proving prejudice, *Fields*, 956 F.2d at 1297, and if the defendant cannot meet this burden, then the performance prong of *Strickland* need not be considered. *Id.* at 1297. *See also*, *Strickland*, 466 U.S. at 697, and *Hutchins*, 724 F.2d at 1430-1431.

Dawson's burden on the second prong is even higher than normal in that he pleaded guilty. Petitioner does not claim, nor has he ever claimed that he desires a trial on the charges contained in Indictment 02-1305. By taking this position, petitioner cannot establish the "prejudice" prong of the analysis required by the Supreme Court's decision in <u>Strickland v Washington</u>, 466 U.S. 668, 688, 694 (1984). In cases where a defendant pleads guilty, the Supreme Court has stated "... in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial", <u>Hill v Lockhart</u>, 474 U.S. 52, 59 (1985). Petitioner has not and does not insist on going to trial, so he cannot pass the <u>Strickland</u> test.

### **Failure to Object to Petitioner's Career Offender Status**

Petitioner argues that counsel was ineffective for failing to object to the Probation Officer's inclusion of ¶¶'s 30 and 31 in determining that petitioner was a career offender as that term is defined in United States Sentencing Guidelines ("USSG") § 4B1.1. Specifically, Dawson asserts that he did not have at least two prior felony convictions of

4

either a crime of violence or a controlled substance offense.  He asserts that the "convictions relied upon by the government are related convictions and must be assessed as one" prior conviction.

On the contrary, at the time of sentencing for the instant offense, Dawson's prior record included no less than *three* prior convictions of either a crime of violence or a controlled substance offense.  As outlined in ¶ 29 of the PSR, petitioner was convicted of Conspiracy to Commit Murder and several counts of Assault with Intent to Kill on October 22, 1996.  These concurrent convictions qualify as prior "crimes of violence" for purposes of section 4B1.1.  *See* USSG § 4B1.2, comment. n. 1 ("Crime of violence" includes *murder*, manslaughter, kidnapping, *aggravated assault*....")(emphasis added); and *United States v. Payton*, 28 F.3d 17, 19 (4th Cir. 1994).  Further, as outlined in ¶¶'s 30 and 31, petitioner was convicted of two separate counts of Possession of Crack with the Intent to Distribute on April 11, 2000.  These convictions are unquestionably "controlled substance offenses" for purposes of section 4B1.1's career offender provisions.  *See* USSG § 4B1.2(b) (The term "controlled substance offense" means an offense under federal or state law ... that prohibits the ... possession of a controlled substance with intent to ... distribute.).

Thus, in keeping with the requirements of § 4B1.1's career offender provisions: (1) petitioner was at least 18 years old at the time he committed the instant offense; (2) the instant offense of conviction (Possession with the Intent to Distribute Crack) was a felony that is a controlled substance offense, and (3) at the time of the instant offense, petitioner

5

had previously been convicted of at least one crime of violence (¶ 29 of the PSR) and at least one controlled substance offense (¶¶'s 30 and 31 of the PSR, respectively). Consequently, the court correctly determined that Dawson was a career offender for purposes of determining both his base offense level and his criminal history category under § 4B1.1. Thus, Dawson's claim of Ms. Walsh's ineffectiveness in failing to object to his career offender status must fail because he cannot establish that the alleged failures were outside the range of competence demanded of attorneys in criminal cases. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Indeed, Dawson's criminal record at the time of sentencing clearly supported the application of § 4B1.1.

## Failure to Object to Petitioner's Criminal History Computation

Next, Dawson asserts that counsel was ineffective for failing to object to the Probation Officer's allegedly erroneous computation of his criminal history points. Petitioner asserts that his convictions outlined in ¶¶'s 27 through 29 of the PSR are related[1] such that they should only have been treated as one conviction for purposes of calculating his criminal history points pursuant to § 4A1.2. Petitioner sets forth a similar argument for his convictions outlined in ¶¶'s 30 and 31 of the PSR. However, as discussed above, the Probation Officer and the court correctly determined that Dawson was a career offender pursuant to § 4B1.1. As such, petitioner's argument, even if true,

---

[1] The offenses outlined in ¶¶s 27 through 29 of the PSR were separated by intervening arrests and, therefore, were not related for the purposes of calculating Petitioner's criminal history score under § 4A1.2. Indeed, the Guidelines specify that an intervening arrest occurs when the defendant is arrested for the first offense prior to committing the second offense. *See* USSG § 4A1.2, comment. (n.3); and *United States v. Collins*, 2005 WL 1427431, *8, n. 10 (4th Cir., June 20, 2005)(unpublished).

6

would not have affected his classification as a Category VI criminal history score. *See* 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be a Category VI"). Thus, in that Dawson has not shown that this objection to his sentence would have had merit, he has not shown that counsel's performance was objectively unreasonable. He has further failed to demonstrate that the outcome would have been different but for any alleged failures by Ms. Walsh. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Accordingly, petitioner's claim of ineffective representation for failure to object to the aforementioned sentencing determinations must also fail.

### **Failure to Object to Petitioner's Offense Level Calculations**

Like his other arguments, Dawson's third assertion (that counsel was ineffective for failing to object to ¶ 17 of the PSR) is also without merit. As the Government points out, the transcript of Dawson's sentencing hearing reveals that Ms. Walsh did in fact object to ¶ 17 of the PSR, although she correctly noted that the two-level enhancement had no bearing on petitioner's ultimate sentence. Further, as a career offender under § 4B1.1, Dawson was subject to the offense level computations listed in § 4B1.1(b) because his offense level as a career offender was "greater than the offense level otherwise applicable ..." to his case. Thus, while Dawson's adjusted offense level (including the allegedly erroneous two-level enhancement in ¶ 17) would otherwise have been 28 (see ¶ 21 of the PSR), he ultimately was saddled with an adjusted offense level of 34 (see ¶ 22 of the PSR) due to the fact that the Probation Officer properly determined that he was a

career offender. In short, Dawson has not demonstrated that this objection (which was actually raised by counsel) would have had any merit, and thus, he has not shown a "reasonable probability" that the outcome of the proceeding would have been different but for any alleged failure by his attorney. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Accordingly, this claim too must fail.

### **Failure to Object to the Ultimate Sentence Imposed by the Court as Violative of the Guidelines**

Finally, petitioner asserts that Ms. Walsh was ineffective for failing to object to the court's imposition of a sentence that did not give him credit for his previous time spent in state prison.[2] Petitioner fails to even mention the extraordinary steps taken by Ms. Walsh to obtain just such a reduction of Dawson's ultimate sentence. Specifically, Ms. Walsh filed a motion for downward departure on petitioner's behalf pursuant to USSG § 5G1.3(b), n. 7[3], and raised the very issue that Dawson now claims that counsel failed to raise at sentencing. Indeed, during the sentencing hearing, counsel again referenced petitioner's pending motion for a departure from the Guidelines based on his

---

[2] Prior to being indicted in federal court for the instant federal offenses, Petitioner served 21 months in state custody for the same conduct for which he was later prosecuted in federal court.

[3] The current version of Application Note 7 is found at 5G1.3(b), n. 4, and states as follows:

Downward Departure Provision.--In the case of a discharged term of imprisonment, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense.

prior state sentence. This court chose to deny Dawson's motion. Accordingly, this claim is also without merit.

THEREFORE, Dawson's motion to vacate, set aside, or correct his sentence is **DENIED**, and the United States' Motion for Summary Judgment is **GRANTED**.

**AND IT IS SO ORDERED**.

_____
David C. Norton
United States District Judge

Charleston, South Carolina

September 15, 2005

9